**L. Joseph ALBRIGHT, Plaintiff–Appellee,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA and GTE Government Systems Corporation, a Delaware corporation, Defendants–Appellants.**

No. 94–1044.

United States Court of Appeals,
Tenth Circuit.

July 18, 1995.

Madonna E. Dell'Olio of Cornish and Dell'Olio, Colorado Springs, CO, for plaintiff-appellee.

Sandra L. Spencer of White & Steele, P.C., Denver, CO, (Lina C. George–Sauro of White & Steele, and Michael L. Parker, UNUM Life Ins. Co. of America, Portland, ME, on the briefs), for defendants-appellants.

Before BALDOCK, ALARCON,* and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Plaintiff–Appellee L. Joseph Albright ("Albright") brought this action against Defendants–Appellants UNUM Life Insurance Company of America and GTE Government Systems Corporation (collectively, "UNUM")

---

* The Honorable Arthur L. Alarcon, Senior Circuit Court Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

pursuant to 29 U.S.C. § 1132(a)(1)(B)[1] of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001–1461.[2] The district court granted Albright's motion for summary judgment on his ERISA claim, and UNUM now appeals that ruling. However, we decline to review the district court's grant of Albright's motion for summary judgment because that decision does not constitute a final order under 28 U.S.C. § 1291.[3] Thus, we DISMISS this case for lack of appellate jurisdiction.

## BACKGROUND

As we are dismissing this case for lack of appellate jurisdiction, we will not extensively discuss the facts relevant to the substantive issues implicated in this case. However, we will briefly review the factual basis of Albright's claim and the procedural posture of the dispute in order to explain why the grant of summary judgment did not constitute a final order for purposes of § 1291.

On August 13, 1990, a co-worker of Albright's pulled the cane that Albright uses to walk out from under him. As a result of this accident, Albright suffered a back injury and applied for permanent disability benefits under his employee benefit—and ERISA regulated—insurance policy. That policy provides for permanent disability benefits to any employee who, based on a job-related injury, is unable to "perform each of the material duties of his regular occupation." Aplt.App. at 14. As a "Class 2" employee, Albright's disability benefits began after a 180 day elimination period—that is, only after he had been off the job because of an injury for at least 180 days and still could not return to work. *Id.* at 8. A Class 2 employee's dis-

ability benefits are calculated pursuant to the following formula:

Class 2

a. 66⅔% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits.

> Note: This benefit is subject to reductions for earnings as provided in the Monthly Benefit section of this policy.

b. The maximum monthly benefit is $10,-000.

\* \* \* \* \* \*

All Classes

The minimum monthly benefit is the greater of:

a. $100.00; or

b. 10% of the monthly benefit before deductions for other income benefits.

*Id.* at 7. The policy defines "basic monthly earnings" as "the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins. It does not include commissions, bonuses, overtime pay and other extra compensation." *Id.* at 8. The policy specifies that if "the insured is earning more than 20% of his indexed predisability earnings in his regular occupation or another occupation," then the benefits must be calculated pursuant to a different formula. *Id.* at 19. Moreover, an insured's benefits must also reflect a deduction of any other "income benefits," including workers' compensation, Social Security, or other like-kind benefits. *Id.* at 19–20.

Albright initially brought suit in Colorado state court alleging that (1) he had been wrongly denied disability benefits; and (2) that UNUM engaged in an unlawful conspiracy to deny him these benefits. UNUM then

---

**1.** 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary:

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

**2.** On or about January 1, 1986, UNUM Life Insurance Company of America contracted with Contel Federal Systems, Inc. (which has since

merged with GTE) for a group long term disability insurance policy to cover its employees. Thus, both UNUM, as Albright's insurer, and GTE, as Albright's employer, were named as defendants in this action.

**3.** 28 U.S.C. § 1291 provides, in relevant part, that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court."

timely removed this case to the United States District Court for the District of Colorado. Albright subsequently filed for summary judgment on both claims, presenting evidence that UNUM ignored evidence that he was permanently disabled and instead relied on questionable authority in denying him disability benefits. On December 23, 1993, Judge Kane granted Albright's motion for summary judgment on the ERISA claim and denied his motion for summary judgment on the conspiracy claim and dismissed that claim. On December 28, 1993, Judge Kane signed and entered a separate "Judgment" ordering that such relief be granted. UNUM then filed this appeal.

In his Complaint, Albright asked only for a "judgment that will fairly compensate him for all disability benefits to which he is entitled to under the plan described above." *Id.* at 5. In requesting summary judgment, Albright specified that his claim for benefits involved the "monthly benefit of 66⅔% of his preinjury basic monthly earnings less other income benefits such as workers' compensation and Social Security Disability." *Id.* at 72. In concluding his motion for summary judgment, Albright requested that "[s]ummary judgment should be entered, and attorney's fees and costs should be entered against the Defendant UNUM," *id.* at 90, but failed to address specifically what benefits would be owed to him. In responding to this motion, UNUM outlined the contractual provisions relevant to whether Albright was entitled to any benefits, but did not reference the provisions governing the amount of benefits owed, *see id.* 413–415, nor did UNUM argue what benefits it would owe to Albright were it to pay any benefits at all. Finally, the district court did not address the issue of what benefits UNUM owed Albright either in the oral argument on the motion for summary judgment, the Memorandum and Order, or the Judgment.

## DISCUSSION

■ It is well settled that we can only address the underlying merits of a lawsuit if it meets the requirements for appellate jurisdiction outlined in 28 U.S.C. § 1291. *D & H Marketers, Inc. v. Freedom Oil & Gas, Inc.,*

744 F.2d 1443, 1444 (10th Cir.1984) (en banc). Under § 1291, we have jurisdiction only over "final" decisions of the district court—that is, those decisions that "leave[ ] nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Thus, the touchstone of a final order is "a decision by the court that a party shall recover only a *sum certain.*" Fed.R.Civ.P. 58 (emphasis added).

■ In considering whether the judgment constitutes a "final decision" under § 1291, the "label used to describe the judicial demand is not controlling," *United Bonding Ins. Co. v. Stein,* 410 F.2d 483, 486 (3d Cir.1969) (per curiam) (internal quotations omitted), *overruled on other grounds, Cohen v. Bd. of Trustees of the University of Med. and Dentistry,* 867 F.2d 1455, 1467 (3d Cir. 1989)—that is, we must analyze the substance of the district court's decision, not its label or form. In the instant case, the district court filed a document entitled "JUDGMENT" ("the judgment"), which specifically ordered UNUM to reimburse Albright for costs and attorney's fees as well as that "judgment [be] entered on behalf of plaintiff's first claim for relief." Aplt.App. at 486. However, as mentioned above, Albright's first claim for relief did not request a "sum certain" of disability benefits.

In response to a request from this court that the parties file supplemental memoranda to address the issue of appellate jurisdiction under § 1291, Albright argued that we lacked jurisdiction to consider the merits of UNUM's appeal because the judgment did not specify a sum certain and thus, it cannot "transform a nonappealable order into a final decision." Mem.Br. of Aplee. at 2. This argument finds support in the general and well-established rule that "an order that determines liability but leaves damages to be calculated is not final." 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, *Federal Practice and Procedure* § 4009, at 576 (1977); *see also Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976) ("where assessment of damages or awarding of other relief remains to be re-

solved," judgments "have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291"); *McKinney v. Gannett Co., Inc.,* 694 F.2d 1240, 1246 (10th Cir.1982) ("Judgments which, as here, merely determine liability are not final.").[4]

 UNUM responded to Albright's argument by maintaining that the final order doctrine should be given a "practical rather than technical construction," *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), and that in the instant case, the district court has granted the only remedy sought.[5] While not explicitly contending that this case fits into a longstanding exception to the general rule that a sum certain must be calculated before we can assume appellate jurisdiction, UNUM's argument echoes the principle that "an order is final even if it does not reduce the damages to a sum certain if the order sufficiently disposes of the factual and legal issues and any unresolved issues are sufficiently ministerial that there would be no likelihood of further appeal." *Apex Fountain Sales, Inc. v. Kleinfeld,* 27 F.3d 931, 936 (3d Cir.1994) (quotations omitted); *Goodman v. Lee,* 988 F.2d 619, 626–27 (5th Cir.1993) (per curiam) (outlining exception to final order doctrine where calculation of damages is ministerial and pursuant to a predetermined procedure); *Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust,* 920 F.2d 651, 656–57 (10th Cir.1990) (where prejudgment interest readily ascertainable from complaint, appellate jurisdiction was proper).[6] That is, when the amount of dam-

ages awarded pursuant to a judgment on liability "speaks for itself," we can assume jurisdiction under an exception to the final order doctrine; however, if calculating damages would be complicated and the possible subject of a separate and future appeal, then we cannot assume appellate jurisdiction over the issue of liability. *See Goodman,* 988 F.2d at 626.

 At oral argument, Albright's counsel changed her position and requested that we take jurisdiction because Albright has been waiting for years to receive the benefits awarded below. While we are sympathetic to Mr. Albright's plight, we must strictly adhere to the procedural limitations which define the scope of our jurisdiction. Here, the calculation of the disability benefits owed to Albright is not likely to be a ministerial and uncontroversial process. That is, both determining the correct amount of monthly benefits and the proper deductions for other income benefits may prove to be complicated and disputed calculations. Thus, as we cannot confidently determine that there will be no further litigation on the issue of damages, the final order doctrine precludes us from assuming jurisdiction over this appeal.

 We also refuse to assume jurisdiction over this appeal on the ground that considerations of justice demand that we depart from the general rule outlined in the final order doctrine. The doctrine which would justify such a departure from the general rule is the "practical (or pragmatic) finality" exception to the final order doctrine. That exception

---

4. Other circuits have also repeatedly endorsed this principle. *See, e.g., Garzaro v. University of Puerto Rico,* 575 F.2d 335, 337 (1st Cir.1978) (order ruling on liability, but leaving open the issue of damages, is not a final order under § 1291); *In re Martin–Trigona,* 763 F.2d 135, 138 (2d Cir.1985) (same); *Sun Shipbuilding & Dry Dock Co. v. Benefits Review Bd.,* 535 F.2d 758, 760 (3d Cir.1976) (per curiam) (noting "well-established rule of appellate jurisdiction ... that where liability has been decided but the extent of damage remains undetermined, there is no final order"); *Peterson v. Lindner,* 765 F.2d 698, 702 (7th Cir.1985) (order leaving open issue of damages was not final and appealable); *Laclede Gas Co. v. Amoco Oil Co.,* 531 F.2d 942, 943 (8th Cir.1976) (per curiam) (same); *Hain Pure Food Co., Inc. v. Sona Food Prods. Co.,* 618 F.2d 521, 522 (9th Cir.1980) (per curiam) (same).

5. While the remedy also included the award of costs and attorney's fees—which are yet to be determined—it is well settled that an award of yet-to-be determined attorney's fees does not alter the fact that there has been a decision on the merits. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202–03, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988).

6. Some courts have dated this principle as almost 170 years old. *See, e.g., Caradelis v. Refineria Panama, S.A.,* 384 F.2d 589, 591 (5th Cir. 1967) ("only when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a 'final decision' ") (citing *Chace v. Vasquez,* 24 U.S. (11 Wheat.) 429, 6 L.Ed. 511 (1826)).

provides that a court may assume jurisdiction where "the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Bender v. Clark*, 744 F.2d 1424, 1427 (10th Cir.1984). However, the practical finality exception "has lived a checkered life in both our court and the United States Supreme Court." *Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994). In *Gillespie v. United States Steel Corp.*, the Supreme Court explained that the practical finality exception provides that we should assume appellate jurisdiction where the questions presented on appeal are "fundamental to the further conduct of the case" and where "the danger of denying justice by delay" outweigh "the inconvenience and costs of piecemeal review." 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964) (quotation omitted). However, we very sparingly employ this exception,[7] applying it only to truly "unique" or "exceptional" circumstances. *Kennecott Corp.*, 14 F.3d at 1496; *Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir.1993) (underscoring that the practical finality exception must be "invoked only in truly 'unique instances' [i.e. where the issue is one of substantial magnitude] if we are to preserve the vitality of § 1291").

 Given that Albright is already receiving Social Security disability insurance, his only interests in immediate appellate review are minimizing the costs of the litigation and getting his benefits sooner rather than later. We do not see in this an issue of sufficient national significance to justify invoking the "practical finality" exception. As Albright's circumstances are not sufficiently exceptional or unique to warrant immediate

appellate review nor is the procedural posture of this case such that the issues raised will be unreviewable if not considered by us now, we cannot exercise jurisdiction under the practical finality exception to § 1291. Moreover, the fact that the parties—in the wake of Albright's changed position as to jurisdiction—now both request that we exercise appellate jurisdiction does not circumvent the final decision requirement of § 1291, since consent of the parties cannot justify appellate review of an otherwise nonappealable order. *Drake v. Gordon*, 848 F.2d 701, 704–05 (6th Cir.1988). While the instant case presents a situation where our declining to exercise jurisdiction may delay the award of Albright's disability benefits, this case also underscores our commitment to the policy against piecemeal review that is a central feature of our judicial system.[8]

## CONCLUSION

While there may be cases in which the lack of a sum certain will not preclude appellate review, the instant case is not one of them. It is well settled that the final order doctrine limits our jurisdiction to cases where our decision will effectively terminate all litigation on the merits. In the instant case, there is still the realistic possibility—if not the probability—that the parties will contest the amount of disability benefits owed to Albright. Thus, we must DISMISS this appeal for lack of jurisdiction and REMAND this case to the district court for further proceedings.

---

7. *See, e.g., Clark v. Kraftco Corp.*, 447 F.2d 933, 936 (2d Cir.1971); Joseph Mitzel, Note, *When Is an Order Final?: A Result–Oriented Approach To The Finality Requirement for Bankruptcy Appeals to Federal Circuit Courts*, 74 Minn.L.Rev. 1337, 1345 (1990) (suggesting that lower courts regularly interpret *Gillespie* narrowly or ignore it altogether).

8. *See United States v. Nixon*, 418 U.S. 683, 690, 94 S.Ct. 3090, 3098–99, 41 L.Ed.2d 1039 (1974) (explaining that the finality requirement of § 1291 "embodies a strong congressional policy

against piecemeal reviews" and "ordinarily promotes judicial efficiency and hastens the ultimate termination of litigation"); 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3913, at 462 (1992) ("Although well-established rules of appealability might at times cause an action to be determined unjustly, slowly, and expensively, they have nonetheless the great virtue of forestalling the delay, harassment, expense, and duplication that could result from multiple or ill-timed appeals.").